### JONES *v.* CODY.

PUBLIC SCHOOLS—ENFORCEMENT OF RULES BY TEACHER—AUTHORITY OVER PUPILS AFTER SCHOOL.

A principal of a public school, who enforces a rule of the school board requiring pupils to go directly home at the close of school, adopted under a statute conferring authority on the board to make rules relating to the good government of the schools and the welfare of the public concerning the same, is not liable for the damages sustained by the owner of a store arising from a loss of trade due to such enforcement.

Error to Wayne; Brooke, J. Submitted November 19, 1902. (Docket No. 98.) Decided December 16, 1902.

Case by John P. Jones and Catherine Jones against Frederick Cody to recover damages for a loss of trade. From a judgment for defendant on verdict directed by the court, plaintiffs bring error. Affirmed.

Counsel for appellants has made no statement of the case as provided by Sup. Ct. Rule 40, which reads as follows: ·

". The brief of a party bringing a cause into this court shall contain a clear and concise statement of the facts of the case, distinct from argument, and of the errors upon which he relies, the questions involved, and the manner in which they are raised. The court will consider such statement sufficient and accurate unless the opposite party shall point out in his brief wherein the statement is insufficient or inaccurate."

We might affirm the judgment for this reason, but, as the case is one of considerable importance, we will dispose of it on the merits. Defendant's counsel has made a clear statement, which we have verified and find correct.

The plaintiffs are the owners of a small confectionery store situated opposite the Webster School, one of the public schools of the city of Detroit. Mrs. Jones had full charge of the business. The defendant was principal of the school. The schools are under the control of the board of education, which derives its powers from a special act of the legislature. Section 8 of the act gives the board—

"Authority to make by-laws and ordinances    *    *    * relative to the employment and examination of teachers, their powers and duties; relative to the regulation of schools, and the books to be used therein;    *    *    * relative to anything whatever that may advance the interests of education, the good government and prosperity of the free schools in said city, and the welfare of the public concerning the same." Laws 1869, No. 233.

This controversy arises over the enforcement of rule 87, subdivision c, which provides that "pupils are required to go directly to their homes at the close of school at noon and at night, unless required or specially permitted by their teachers to remain." This has been a rule of the board for many years. In the fall and winter of 1899 the defendant had not required a strict compliance with this rule. It was his habit, after the various rooms had been dismissed at noon and night, to go around, straightening

up his affairs inside the school building. He then went to the principal's room, got his coat and hat, and started for home. This occupied about 10 minutes after the pupils had been dismissed. In passing out of the school block, if he noticed any of the boys loitering in the streets, he told them to go home; and if they were in the stores he stepped to the door, or inside, and said: "Come, boys, your time is up; you must go on home."

Plaintiffs found no fault with the rule or method of enforcement until January 10, 1900. On that date the principal, seeing some of the boys in plaintiffs' store, stepped inside, as had been his custom, to send them on their way home. He was then informed by Mrs. Jones that she did not wish him to come into her place of business to order the boys out, and he at once informed her that, if not allowed to enforce the rule in the manner he was enforcing it, he would be obliged to enforce it strictly, and require the pupils to go directly to their homes at the close of school sessions. In the interval between January 10 and February 14, 1900, the trouble was brought to the notice of the superintendent of schools, and also the committee of the board on teachers and schools. Mrs. Jones made a complaint in person to the superintendent, and wrote a letter and called upon Mr. Love, the chairman of the committee. Mr. Cody went to the superintendent for instructions, and later appeared before the committee. From both the superintendent and the committee he received instructions to enforce the rule, and accordingly on February 14, 1900, he had the teachers read the rule to the pupils in the various rooms of the school. It is this action in enforcing the rule strictly in accordance with its terms of which plaintiff makes complaint. She says her trade, which amounted to $5 or $6 per day, "fell off right away;" and because, as she claims, the enforcement of this rule of the board lessened her trade with the scholars, she brings this action against the defendant, who was carrying out the instructions of his superiors. The court directed a verdict for the defendant.

*James H. Pound*, for appellants.

*Arthur Webster*, for appellee.

GRANT, J. (*after stating the facts*). No malice is alleged in the declaration, and none shown by the proofs. The assertion of plaintiffs' counsel that defendant acted *malo animo* has not even a shadow for a basis. No fault is or can be found with the manner in which the defendant enforced the rule. Plaintiffs made no objection to defendant's method until Mrs. Jones requested him not to enter her store to notify the pupils to go home. He then ceased doing this, and, by the direction of the committee, caused the rule to be read to the pupils in all the schoolrooms. This action was commendable, and obedience on the part of the pupils was equally commendable. The rule and the method of enforcing it are reasonable, unless it be the law that those in control of our public schools have no jurisdiction over pupils outside the schoolhouse yard. It is not only the legal right, but the moral duty, of the school authorities, to require children to go directly from school to their homes. All parents who have a proper regard for the welfare of their children desire it. The State makes it compulsory upon parents to send their children to school, and punishes them for failure to do so. The least that the State can in reason do is to throw every safeguard possible around the children who in obedience to the law are attending school. The dangers to which children are exposed upon the streets of cities are matters of common knowledge. Humanity and the welfare of the country demand that a most watchful safeguard should, so far as possible, accompany children, when required or allowed to be on the streets. Parents have a right to understand that their children will be promptly sent home after school, and to believe that something untoward has happened when they do not return in time. In no other way can parents and teachers act in harmony to protect children from bad influences, bad companionship, and bad morals. No trader or merchant has the constitutional right to have children

remain in his place of business, in order that they may spend money there, while they are on their way to and from school. The liberty of neither the child nor parent nor trader is at all unlawfully restrained by this rule and its reasonable enforcement. The rule does not interfere with the right of the parent to send his child upon an errand, to a store or other reputable place, or to the home of a relative or friend to visit. Neither does it restrict the authority of parents over their children. This action on the part of the school board of the city of Detroit and its teachers is fully sustained by the authorities. *Lander* v. *Seaver*, 32 Vt. 120 (76 Am. Dec. 156); *Deskins* v. *Gose*, 85 Mo. 485 (55 Am. Rep. 387); *Sherman* v. *Inhabitants of Charlestown*, 8 Cush. 160; Mechem, Pub. Off. § 730.

Judgment is affirmed.

The other Justices concurred.