State ex rel. Dresser v. District Board, 135 Wis. 619.

answer nor the proof supports such defense. There is in fact no testimony rising to the dignity of proof of an agreement not to prosecute defendant for any offense. There is neither allegation nor proof that, at the time the notes were given, any criminal prosecution was pending against the defendant or that he was in fact guilty of any criminal offense. Such allegation and proof would be necessary in order to support this defense. *Catlin v. Henton,* 9 Wis. 476; *Schultz v. Catlin,* 78 Wis. 611, 47 N. W. 946; *City Nat. Bank v. Kusworn,* 88 Wis. 188, 59 N. W. 564; *Johnston H. Co. v. McLean,* 57 Wis. 258, 15 N. W. 177; sec. 4501, Stats. (1898). The court below found that there was not sufficient evidence to go to the jury upon any of the issues raised by the defendant's answer, and we are inclined to the opinion that the court was right, therefore cannot disturb the ruling. It follows that the judgment below must be affirmed.

*By the Court.*—The judgment of the court below is affirmed.

STATE EX REL. DRESSER, Appellant, vs. DISTRICT BOARD OF SCHOOL DISTRICT No. 1 and another, Respondents.

*April 21—May 8, 1908.*

*Appeal: Irregular procedure: Appellant precluded by consent to allege error: Appeal from final judgment: Reviewing error in subsequent proceedings: Pleadings: Amendment: Immaterial variance: Schools: Discipline: Power to punish where no specific rules: Offenses committed after school hours: Judicial control.*

1. Where the court and the parties in an action for *mandamus* treated a demurrer to the return as an answer, and a consent order was entered referring the only controverted issue to a referee to report the testimony, and upon his report the court overruled the demurrer and denied the writ, the relator, having consented to such procedure, cannot complain.
2. An appeal from a judgment in favor of respondent in an action for *mandamus* will not bring up for review an order denying a motion, made after the judgment, to amend the petition.

3. Where there is no conflict of testimony as to the facts of a proposed amendment to a petition for *mandamus*, a variance between the pleading and the proof is not material, and the court may under sec. 2670, Stats. (1898), find the facts in accordance with the evidence, or order an amendment to the petition.

4. Under sec. 439, Stats. (1898), a school board may suspend a pupil for misconduct although no formal rule has been prescribed relating to such conduct.

5. School authorities may suspend a pupil for an offense committed outside of school hours and not in the presence of the teacher which has a direct and immediate tendency to influence the conduct of the pupils while in the school room, to set at naught the proper discipline of the school, to impair the authority of the teachers, and to bring them into ridicule and contempt.

6. School authorities are vested with a broad discretion in the government and discipline of pupils, and courts will not interfere with the exercise of such authority unless it has been illegally or unreasonably exercised.

7. For causing the publication in a local newspaper of a satirical poem reflecting on the regulations of the school, certain pupils were suspended until they should apologize. *Held*, that the imposition of such a penalty was not an abuse of the discretion conferred upon school authorities in the discipline and government of pupils.

APPEAL from a judgment of the circuit court for Polk county: A. J. VINJE, Circuit Judge. *Affirmed.*

This is an action of *mandamus* commenced by the relator against the *District Board* and *G. J. Baker,* principal of the high school of St. Croix Falls, to compel the reinstatement of two of relator's children who had been suspended by the principal. The petition, after the formal averments, states, in substance, that relator's two minor children had been continuous in their attendance upon the high school up to and including October 16, 1906, on which date they were suspended by the principal; that said suspension was illegal, but had been ratified by the district board and still continued in force; that said children cannot be readmitted to said school "unless they should apologize with a falsehood;" that the alleged cause of suspension of said children was a harmless act

by them and three other pupils of the high school, which oc-
curred after the schools had closed on October 10, 1906, and
not during school hours, or in the building where the school
was maintained, or while said children were under the con-
trol of said principal; that at the request of a member of the
senior class, who had written a harmless poem, being a take-
off on the rules of the school, the offending pupils, who were
younger and less experienced, took the writing to the office
of a weekly newspaper published in the same village and re-
quested the publisher to print the same in his paper if there
was nothing wrong in it; that the publisher, deeming the
same harmless, published it in part of the next issue of the
paper. The poem was printed as part of the petition, but it
is here omitted. It is alleged that the deportment of the
children in school had been good and they had never vio-
lated any of the rules prescribed for its management. An
alternative writ was issued on November 7, 1906, based upon
the petition, with supporting affidavits.

The defendants in the return to the writ state, in sub-
stance, their belief that the publication of the poem in ques-
tion in a public newspaper was detrimental to the interests
of the school; that it not only tended to hold up said school,
its discipline, and its teachers to public contempt and ridi-
cule, but it tended toward awakening in the minds of the
pupils themselves a feeling of hostility toward the teachers
and a defiance toward the proper control and management
of the school; that after the offense had been committed the
children were advised of the harmfulness of their conduct
and required to apologize, and upon their refusal they were
suspended; that their reinstatement without suitable apol-
ogy would be detrimental to the interests of the school and
subversive of proper discipline therein; wherefore they ask
that the petition be denied.

The relator demurred to this return on November 14,
1906. Thereupon the court, as appears by recitals in the

subsequent findings, appointed a referee with the consent of the attorneys for the respective parties to take and report the evidence relating to the precise grounds of suspension of relator's daughters and the substance of what was said between the teachers and said pupils previous to and at the time of their suspension. The referee made his report on the 30th day of November, which contains the testimony of the principal and two of his associates and of three of the pupils, including the relator's children. The principal testified that after he learned that the relator's children had taken the poem to the printing office, "I then told them that their penalty is that you are suspended until you apologize and pay forty cents each." In the apology "they were simply to admit that they did a wrong thing, that they were sorry for it, and if they came back to school they should promise to be obedient students." The other witnesses gave substantially the same testimony. Thereafter and on December 24, 1906, the court filed an opinion sustaining the action of the school authorities, and in conclusion overruled the relator's demurrer to the return and dismissed his motion for a peremptory writ of *mandamus,* with costs. There was no request made on behalf of the relator to withdraw the demurrer and to file an answer, and no formal application was made to amend the petition until after the entry of judgment. No further testimony was taken, and on December 28, 1906, the court made and filed its findings in favor of the defendants and directing the dismissal of the petition. From the judgment entered thereon, bearing the same date, this appeal is taken. Thereafter and at a special term of said court, and on the 31st day of January, 1907, a petition theretofore filed on behalf of the relator, based on the evidence taken before the referee, asking leave to amend the petition by adding the words "and pay forty cents each," in their proper place, relating to the penalty imposed at the time of the suspension, came on to be heard, and

was denied by the court. There was an exception to the order, but no appeal has been taken therefrom.

*Frank B. Dorothy,* for the appellant.

For the respondents there was a brief by *Clarence C. Coe & Arthur E. Coe,* and oral argument by *Clarence C. Coe.*

BASHFORD, J. The procedure adopted in determining the issues presented by the pleadings in this action was informal and irregular and cannot be approved. The demurrer to the return raised an issue of law, which should first have been disposed of, and, if overruled, leave should have been given to the relator, if he so desired, to withdraw the same and amend his petition, or to interpose an answer if an issue of fact was to be presented. The court and the attorneys for the respective parties evidently treated the demurrer as an answer to the return, as a consent order was entered referring the only controverted issue to a referee to report the testimony. There was no material conflict in the evidence, and upon the report of the referee the court filed an opinion determining the issues of law and fact in favor of the respondents, and overruling the relator's demurrer to the return and denying his motion for a peremptory writ of *mandamus.* Formal findings were made in accordance with the opinion, upon which the judgment was entered. This summary method of trial has in the opinion of the court met the substantial ends of justice, and the relator by consenting thereto is in no position to complain.

Error is assigned by the appellant upon the refusal of the court to permit an amendment to the petition setting up the requirement of the school authorities that the suspended pupils should pay a penalty of forty cents each as a condition of reinstatement. Formal application to amend was not made until after judgment, and there is no appeal from the order denying the same. The appeal being from the judgment, the subsequent order is not reviewable upon this

record. *Bank of Comm. v. Elliott,* 109 Wis. 648, 668, 85 N. W. 417. As there was no conflict in the testimony on this subject, the variance between the pleading and the proof was not material, and the court might have found the fact in accordance with the evidence, or have ordered an amendment to the petition.    Sec. 2670, Stats. (1898). The court did consider the proof with respect to this penalty and very properly suggested in the opinion that no such condition should be attached to the reinstatement of the pupils. It has been held that a school board has no power to make or enforce a rule requiring pupils under penalty of suspension to pay damages for school property accidentally or negligently injured or destroyed. *Perkins v. Board of Directors,* 56 Iowa, 476, 9 N. W. 356; *Hollman v. Trustees,* 77 Mich. 605, 43 N. W. 996.

We are not called upon to approve the practical wisdom displayed by the school authorities in dealing with the hasty conduct of thoughtless school children, prompted by an older mate and abetted by the publisher of the paper, or to justify the strong resentment that must have prompted the relator in appealing to the courts for redress. The exercise of a little charity, forbearance, and good nature might have avoided the controversy, which must have been attended with more or less serious consequence to the suspended pupils as well as to the school and to the litigants here represented. But the cause is before us for decision and must be treated like any other lawsuit.

The remaining assignments of error relate to the power of the school authorities to suspend the offending pupils for the misconduct, which was established by the undisputed evidence. The authority to suspend the pupils from the privileges of the school is denied by the appellant, unless the offense was a violation of some rule prescribed by the board, or involved moral turpitude, or was committed during school hours in the school room or in the presence of the master

and other pupils. In support of this proposition counsel refers to *Board of Ed. v. Purse,* 101 Ga. 422, 28 S. E. 896; *Murphy v. Board of Directors,* 30 Iowa, 429; and *Dritt v. Snodgrass,* 66 Mo. 286. The decision of the Georgia court has no direct application. It was there held that the school board might suspend children who had not been guilty of any violation of the rules of the school, but whose mother, undertaking to call in question the discipline of the teacher over one of the children, entered the school room during school hours, and in the presence of the pupils there assembled used offensive and insulting language to such teacher. *Dritt v. Snodgrass, supra,* is readily distinguishable. There the school board had made a rule that no pupil should during the school term attend a social party, and a pupil by the permission of his parents violated the rule and was expelled. The court held that in prescribing the foregoing rule the board had gone beyond its power and invaded the rights of the parents. *Murphy v. Board of Directors,* 30 Iowa, 429, is directly in point, and supports the proposition stated by the appellant, but the decision is made to turn upon the extent of the power conferred by statute on boards of school directors. The statute provided that the directors should have power to dismiss pupils from school for *gross immorality or for persistent violation of the regulations of the school;* and it was also made their duty to aid the teacher in establishing and enforcing rules for the government of the schools. The words italicised are so written in the opinion as manifesting the power which may be exercised by the board. The plaintiff in that case was not charged with immorality or the violation of any regulation of the school. It is said in the opinion:

"The statute does not authorize the board of directors to *suspend* pupils for acts tending to destroy the peace and harmony of the school, or inciting insubordination in others, or for ridicule of the directors, in the absence of any regulation prohibiting such acts."

Sec. 439, Stats. (1898), confers broader power upon such boards; it authorizes them to make all rules needful for the government of the school and to suspend any pupil for noncompliance with the rules made by themselves or by the teacher with their consent. But it is urged that in the instant case no rule had been prescribed by the board or by the teacher relating to the misconduct complained of. But that contention is fairly met by the decision of this court in *State ex rel. Burpee v. Burton,* 45 Wis. 150.

The case last cited was an action of *mandamus* to compel the reinstatement of a pupil in the school who had been guilty of misconduct which was of itself not a violation of any rule prescribed by the board or by the principal. It is said in the opinion:

"While the principal or teacher in charge of a public school is subordinate to the school board or board of education of his district or city, and must enforce rules and regulations adopted by the board for the government of the school, and execute all its lawful orders in that behalf, he does not derive all his power and authority in the school and over his pupils from the affirmative action of the board. He stands for the time being *in loco parentis* to his pupils, and because of that relation he must necessarily exercise authority over them in many things concerning which the board may have remained silent. In the school, as in the family, there exist on the part of the pupils the obligations of obedience to lawful commands, subordination, civil deportment, respect for the rights of other pupils, and fidelity to duty. These obligations are inherent in any proper school system, and constitute, so to speak, the common law of the school. Every pupil is presumed to know this law, and is subject to it, whether it has or has not been re-enacted by the district board in the form of written rules and regulations. Indeed, it would seem impossible to frame rules which would cover all cases of insubordination and all acts of vicious tendency which the teacher is liable to encounter daily and hourly."

While the offense for which the pupil was suspended is not stated in the *Burpee Case,* it was apparently committed

in the school room and in the presence of the teacher, and hence it may be urged that the two cases are distinguishable. We have been referred to no decision directly holding that the school authorities can suspend a pupil for misconduct after school hours, unless the offense is a violation of established rules, or is committed in the school house or upon the school grounds, or in the presence of the master and other pupils. There is abundant authority, however, that the school board or the teacher may make rules to govern the conduct of the pupils after school hours and punish a violation thereof by suspension from attendance upon school. *Deskins v. Gose,* 85 Mo. 485, 55 Am. Rep. 387; *Hutton v. State,* 23 Tex. App. 386, 5 S. W. 122, 59 Am. Rep. 776; *Wayland v. Hughes,* 43 Wash. 441, 86 Pac. 642, 7 L. R. A. N. S. 352; *Kinzer v. Directors,* 129 Iowa, 441, 105 N. W. 686, 3 L. R. A. N. S. 496; *Jones v. Cody,* 132 Mich. 13, 92 N. W. 495, 62 L. R. A. 160.

It is clear, therefore, that a rule might have been adopted by the school authorities to meet the situation here presented. This court in the quotation already made from the opinion in the *Burpee Case* recognizes certain obligations on the part of the pupil which are inherent in any proper school system, and which constitute the common law of the school, and which may be enforced without the adoption in advance of any rules upon the subject.

This court therefore holds that the school authorities have the power to suspend a pupil for an offense committed outside of school hours and not in the presence of the teacher which has a direct and immediate tendency to influence the conduct of other pupils while in the school room, to set at naught the proper discipline of the school, to impair the authority of the teachers, and to bring them into ridicule and contempt. Such power is essential to the preservation of order, decency, decorum, and good government in the public schools.

The school authorities considered the misconduct for which the pupils were suspended such as to have a direct and injurious effect upon the good order and discipline of the school. The relator's children were instrumental in causing the publication of the poem in a newspaper, which, supposedly, found its way into the homes of many of the children attending the high school, and who would be as much influenced thereby as if the writing had been printed and posted in the school room or there circulated and read. The teachers are especially familiar with the disposition and temper of the children under their charge, and the effect which such a publication would probably have upon the good order and discipline of the school. The school authorities must necessarily be invested with a broad discretion in the government and discipline of the pupils, and the courts should not interfere with the exercise of such authority unless it has been illegally or unreasonably exercised. The trial court has found that the act complained of does not evince an abuse of discretion on the part of the teachers, but rather an earnest desire to counsel, admonish, and discipline the pupils for their own good as well as for the good of the school. That conclusion is supported by the testimony and is here approved. This court is not called upon to decide as to the wisdom of the action of the school authorities, but only as to their jurisdiction within proper limits.

*By the Court.*—The judgment of the court below is affirmed.