Madison Metropolitan School District, Appellant,

v.

Circuit Court for Dane County and
the Honorable David T. Flanagan, III presiding,
Respondents-Petitioners.

Supreme Court

*No. 2009AP2845–W. Oral argument March 1, 2011.
—Decided July 14, 2011.*

2011 WI 72

(Also reported in 800 N.W.2d 442.)

For the respondents-petitioners there were briefs and oral argument by *Bruce Meredith,* Madison.

For the appellant there was a brief and oral argument by *Matthew William Bell,* associate general counsel, Madison School Metropolitan, Madison.

¶ 1. DAVID T. PROSSER, J. This is a review of an unpublished decision and order of the court of appeals[1] granting a writ of prohibition and vacating a circuit court order requiring the Madison Metropolitan School District (the District) to develop and implement an educational plan for M.T., a juvenile who was adjudged delinquent after the District had expelled him from school.

¶ 2. The case presents important issues related to the authority of circuit courts to order educational services for students who are subject to delinquency petitions and also have been expelled from school. The principal questions presented may be stated as follows.

¶ 3. First, does a circuit court have authority to order a school district to provide alternative educa-

---

[1] *Madison Metro. Sch. Dist. v. Circuit Court for Dane Cnty.,* No. 2009AP2845–W, unpublished order (Wis. Ct. App. June 30, 2010).

99

tional services to a juvenile who has been expelled from school by a lawful and unchallenged expulsion order?

¶ 4. Second, did the court of appeals err in utilizing a supervisory writ to review the order of the circuit court?

¶ 5. We conclude:

(1) Wisconsin Stat. § 120.13(1)(c)1.[2] gives a school district express authority to expel a student from school.

(2) A circuit court does not have statutory authority to order a school district to provide alternative educational services to a juvenile who has been expelled from school by a lawful and unchallenged expulsion order but is still residing in the community.

(a) Wisconsin Stat. § 120.12(18) requires a school board to cooperate with the juvenile court and the agency designated by the court to prepare an educational plan under Wis. Stat. § 938.33(1)(e) for a pupil or former pupil who is subject to a dispositional order under Wis. Stat. § 938.34 or Wis. Stat. § 938.355.

(b) Wisconsin Stat. § 120.12(18) requires a school district to "[c]oordinate and provide for continuity of educational programming" for pupils receiving educational services as the result of a court order under Wis. Stat. § 938.34(7d).

(c) Wisconsin Stat. § 120.12(18) does not require a school board or a school district to provide alternative educational resources to a juvenile who has been expelled from school under Wis. Stat. § 120.13(1)(c)1.

(d) Wisconsin Stat. § 938.34(7d) authorizes a circuit court to order a juvenile to attend a variety of educational programs, but it does not authorize a

---

[2] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

circuit court to order a school district to create an educational program or contract for an educational program.

(e) Wisconsin Stat. § 938.45 applies only to natural persons, not legal entities like school districts.

(3) The court of appeals did not err in utilizing a supervisory writ to review the Order to Provide Appropriate Educational Resources in this case.

¶ 6. Consequently, the decision and order of the court of appeals is affirmed.

## I. BACKGROUND AND PROCEDURAL HISTORY

¶ 7. On June 5, 2009, M.T., age 15, brought nine bags of marijuana to the campus of Madison East High School, a public school operated by the Madison Metropolitan School District. M.T. was a student at the school. When his conduct was discovered, M.T. was arrested and charged with possession of marijuana with intent to deliver.

¶ 8. The District immediately filed a complaint seeking the expulsion of M.T. from the District. The District sent all notices required by law, and an independent hearing examiner was appointed pursuant to Wis. Stat. § 120.13(1)(e). Hearing Officer Helen Marks Dicks held an abbreviated hearing on June 26, 2009, and a full hearing on July 6, 2009. The District presented two witnesses at the hearing; M.T. and his mother appeared by telephone but did not testify or present evidence. The hearing was closed to the public at M.T.'s request.

¶ 9. On July 12 the hearing officer issued an order concluding that M.T. engaged in conduct that constituted grounds for expulsion under Wis. Stat. § 120.13(1) and that the interests of the school demanded M.T.'s expulsion. As requested by the District, she ordered M.T.

expelled for three semesters. She adopted the District's recommendations as to the conditions of expulsion, which included giving M.T. the right to apply for readmission after one semester provided certain conditions were met.[3] The District Board of Education approved the order with modifications on July 21, 2009. The expulsion order denied M.T. any educational services from the District for at least one semester, namely, the fall semester of 2009–10.

¶ 10. A separate proceeding commenced on July 9, 2009, when Dane County authorities filed a delinquency petition against M.T. in the Dane County Circuit Court. The case was assigned to Circuit Judge David T. Flanagan who held a plea hearing on August 8 and a dispositional hearing on August 26, 2009.

¶ 11. Prior to the dispositional hearing, Judge Flanagan ordered the Dane County Department of Human Services (DHS) to submit a predisposition report. Wis. Stat. §§ 938.33(1) and 938.38(1)(a). A predisposition report must include: "A plan for the provision of educational services to the juvenile, prepared after consultation with the staff of the school in which the juvenile is enrolled or the last school in which the juvenile was enrolled." Wis. Stat. § 938.33(1)(e).

¶ 12. On August 18, 2009, the DHS submitted a report that suggested 15 specific rules of supervision, including a recommendation that M.T. attend school regularly "with no unexcused absences." The report also advised the court that the District was refusing to provide education programming for M.T. because he had been expelled.

---

[3] M.T. complied with early readmission requirements and was reinstated by the District as a full-time student on January 25, 2010.

¶ 13. The court's August 26 dispositional order included the provision that M.T. "Attend school regularly without unexcused absences."

¶ 14. On September 14 Judge Flanagan sent a letter to the Superintendent of the District, Daniel A. Nerad. Judge Flanagan's letter reads in part:

> I am a Dane County Circuit Court Judge responsible for cases in the Juvenile Court. . . . I have available an impressive range of resources, including direct supervision by experienced social workers of the Dane County Department of Human Services. Remarkably, I find I do not have available what I believe to be the key resource, a bare minimum of educational opportunity and activity. I am advised that this is because the District has expelled this student and will exclude him for possibly three semesters and certainly for one semester.
>
> This young man lives with his mother. I have concluded that she is genuinely concerned for her son and willing to cooperate with efforts to get him back on the proper path. I am advised that this family cannot afford private tutoring. I have contacted several alternative educational programs and I can find nothing for him.
>
> . . . .
>
> I can understand a determination that the safety and security of East High may be well served by excluding a student from the facility. I cannot, however, fathom the need to deny to a young man all possibility of participating in some educational activity, somehow, somewhere. It need not be fun; it need not be comfortable, but some minimal opportunity should be available. . . .
>
> It certainly is not my place to supervise or second-guess the complex operation of East High or any other

103

educational facility. . . . I simply suggest that the juvenile court and the District can and should be working together in this situation. I am confident that the legitimate interests of the District can be fully met without the potentially destructive total exclusion that has been imposed.

¶ 15. On September 28 social worker Maureen Murphy of the Dane County Department of Human Services sent a memorandum to Judge Flanagan, advising him that she had contacted the District's Expulsion Coordinator, without avail. Murphy reported on the various educational options she had explored and that she had recommended that M.T.'s mother fill out the paperwork for home schooling. Murphy's report noted, "Once this is done, she has access to resources available through the WI Dep't. of Public Instruction [DPI]. There are many free online resources and programs . . . . His mother is home during the day and has a computer with internet service." Then Murphy added:

> I am aware that the Court has sent correspondence to the Madison School District expressing concern about the lack of education options for [M.T.] and I am appreciative of this support. . . . Unfortunately, [M.T.] is (like many students who are expelled) a young man who has already struggled in school with attendance and behavior problems. His current expulsion will only further his "disconnect" from school and getting a much needed education.

¶ 16. In a letter dated October 4, 2009, the District replied to Judge Flanagan's letter. Chief of Staff Steve Hartley wrote that the District's "policies and systems do not currently provide for the type of services for expelled students as envisioned in your letter." He asked for an appointment with the court. He also acknowledged receiving a draft Order to Show Cause.

¶ 17. Judge Flanagan issued an Order to Show Cause to the District on October 5. The order said that the court had been advised that the District "refuses to provide even minimal educational opportunity" to M.T. at any District facility "and refuses to provide even home school materials . . . to use under the supervision of his mother who is home during the day."

¶ 18. The court said that, working through the Dane County DHS, it was willing to craft a supervisory plan to serve the reasonable concerns of the District "at whatever location or manner it offers . . . M.T. access to reasonably adequate educational opportunity."

¶ 19. Then the court added:

> In light of the foregoing the court concludes that the refusal on the part of the [District] to make some reasonable effort to provide minimally adequate educational resources to [M.T.] . . . has impaired the ability of the court . . . to discharge its statutory obligations pursuant to the Juvenile Code of Wisconsin. Therefore, pursuant to sec. 938.45(1), Wis. Stats., the court orders the [District] to show cause at 9:30 a.m. Friday, October 16, 2009 . . . why the court should not order it to provide [M.T.] reasonably adequate educational resources, at a location and in a manner subject to the supervision of the court.

¶ 20. In a letter dated October 12, 2009, the District expressed its objection to the order to show cause, and reiterated its position that the court's actions would usurp the District's statutory expulsion authority.

¶ 21. The show cause hearing took place on October 16, 2009, with oral arguments provided by the District and an assistant district attorney. During the hearing, the District argued that defining the terms of a student's expulsion are within its authority, and the

105

court was attempting to usurp that authority by amending the terms of M.T.'s expulsion to provide him with educational services. In response to the court's concerns about continuity of educational services, the District offered M.T. access to its public curriculum, but the court found this option to be insufficient.

¶ 22. Accordingly, on the same day, the court issued an "Order to Provide Appropriate Educational Resources," directing the District to provide M.T. with services "not less than those provided in the Dane County Juvenile Detention Center . . . at whatever location and in whatever manner the District deems to be safe and educationally appropriate." In support of its order, the circuit court stated that the District's refusal to attempt or consider a reasonable educational "challenge and opportunity" contributes to the delinquency of the juvenile under Wis. Stat. § 938.45. Judge Flanagan also concluded that the District is a "person" under § 938.45 and Wis. Stat. § 990.01(26). The circuit court's order did not, however, oppose the District's decision to expel M.T., and it conceded that the District had a proper basis for doing so.

¶ 23. Following the hearing, the District developed an educational program for M.T.[4] providing 10 hours per week of direct instruction, and the court

---

[4] The plan provided specifically:

a. The District shall implement the provision of daily instruction one-on-one to [the juvenile] for not less than two hours with assignment of appropriate independent work to be completed by [the juvenile] outside of instructional time, beginning with two high school courses, commencing October 28, 2009.

b. The District shall monitor attendance and academic progress as well as progress towards meeting early readmission conditions and shall advise Department of Human Services Social Worker . . . as to such matters.

accepted the District's proposal. At the same time the District submitted its educational program, it also filed a Motion for Reconsideration, a Brief in Support of Motion for Reconsideration, and a Motion to Clarify. The circuit court denied the District's Motion for Reconsideration on October 21, 2009.

¶ 24. The District next filed a timely Notice of Appeal and a Notice of Intent to Pursue Postdisposition Relief on November 5, 2009. On appeal, it argued that the circuit court had acted outside the authority afforded by the Juvenile Justice Code when it ordered the District to offer an expelled student direct educational services. The District also sought a determination to restrict future attempts by courts, and others, from unilaterally amending lawful expulsion orders.

¶ 25. On January 12, 2010, M.T. filed a motion to withdraw because he was not the real party in interest.[5] On February 17, in response to the motion, court of appeals Judge Paul B. Higginbotham permitted M.T. to withdraw and substituted the Circuit Court for Dane County and Judge Flanagan as respondents, thus framing the issue around a circuit court's authority to direct the school district to provide educational services to a student who had been expelled. Judge Higginbotham also construed the District's appeal as a petition for a supervisory writ.[6]

---

c. The teacher assigned to provide instruction shall contact Social Worker Murphy, on a not less than weekly basis to advise as to attendance, behavior and academic progress.

[5] M.T. filed a motion to dismiss in the alternative, which the court of appeals denied.

[6] Wisconsin Stat. § 809.51 is the appellate rule that governs petitions for a "[s]upervisory writ and original jurisdiction to issue prerogative writ."

107

¶ 26. In its decision and order dated June 30, 2010, a full panel of the court of appeals determined that the circuit court could not rely on Wis. Stat. §§ 120.12(18) or 938.45 to override the District's prior determination to expel a juvenile under Wis. Stat. § 120.13(1)(c)1. *Madison Metro.*, No. 2009AP2845–W at 7, 10–11.

¶ 27. In addition, the court held that the District satisfied the five criteria for granting a supervisory writ: (1) an appeal would be an inadequate remedy; (2) the duty of the circuit court is plain; (3) its refusal to act within such duty or its intent to act in violation of such duty is clear; (4) the results of the circuit court's action would not only be prejudicial, but also incur extraordinary hardship; and (5) the request for relief was made promptly and speedily. *Id.* at 6 (citing *State ex rel. Dressler v. Circuit Court for Racine County*, 163 Wis. 2d 622, 630, 472 N.W.2d 532 (Ct. App. 1991)).

¶ 28. Specifically, the court reasoned that "the possibility that the school district might be required in the future to provide similar educational services to an undetermined number of expelled students under the circuit court's interpretation of the relevant statutes" satisfied the "extraordinary hardship" requirement. *Madison Metro.*, No. 2009AP2845–W at 6.

¶ 29. The court of appeals reasoned:

> In sum, the school district had the explicit statu-tory authority to refuse to provide educational services to a juvenile pursuant to a valid expulsion order, and the circuit court had no explicit authority to order the school district to provide any educational services which the district did not itself recommend as part of its plan. We therefore conclude that the challenged order in this case clearly violated the circuit court's plain duty to act within its authority.

*Id.* at 11.

¶ 30. Accordingly, the court of appeals granted the District a writ of prohibition and vacated the circuit court's order to provide educational services to M.T. *Id.* at 12.

¶ 31. The circuit court petitioned this court for review, which we granted on October 27, 2010.

## II. STANDARD OF REVIEW

¶ 32. The first issue is whether the circuit court had the authority to order the District to provide educational services to a lawfully expelled student. This requires us to determine the scope of the circuit court's authority under the Juvenile Justice Code,[7] in tandem with the District's authority and duties under the School District Government statutes.[8] This analysis implicates both judicial authority and statutory analysis, both of which are questions of law. *See State v. McClaren*, 2009 WI 69, ¶ 14, 318 Wis. 2d 739, 767 N.W.2d 550; *Konneker v. Romano*, 2010 WI 65, ¶ 24, 326 Wis. 2d 268, 785 N.W.2d 432.

¶ 33. The second issue is whether the court of appeals properly exercised its discretion in issuing a supervisory writ. A person may request the court of appeals to exercise its supervisory jurisdiction to issue a prerogative writ over a court and its presiding judge. Wis. Stat. § 809.51. A supervisory writ is an extraordinary remedy to prevent a court from refusing to perform, or from violating, its plain duty. *Dressler*, 163 Wis. 2d at 630. In this case, the court of appeals issued a writ of prohibition. "A writ of prohibition is an

---

[7] Wis. Stat. ch. 938.

[8] Wis. Stat. ch. 120.

extraordinary remedy traditionally employed to restrain an inferior tribunal from exceeding its jurisdiction." *City of Madison v. Wis. DWD,* 2003 WI 76, ¶ 9, 262 Wis. 2d 652, 664 N.W.2d 584. It may also be employed to prevent a public entity from exceeding its statutory authority. *State ex rel. DPI v. DILHR,* 68 Wis. 2d 677, 686–87, 229 N.W.2d 591 (1975).

¶ 34. The decision to issue a supervisory writ involves an exercise of discretion. *Dressler,* 163 Wis. 2d at 630. A discretionary determination is reviewed for an erroneous exercise of that discretion. *City of Madison,* 262 Wis. 2d 652, ¶ 10. Accordingly, we will affirm a court's discretionary decision if "the court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion which a reasonable judge could reach." *Id.*

## III. DISCUSSION

¶ 35. This case exposes the tension between a school district and a circuit court when a juvenile has been expelled from school for delinquent conduct but has not been committed by the juvenile court to an institution or program that is required by statute to provide educational services. In this situation, the issue of whether the juvenile must receive educational services is uncertain.

¶ 36. The powers of a school board are enumerated in Wis. Stat. § 120.13. The first power listed is related to suspension and expulsion.

> School board powers. The school board of a common or union high school district may do all things

reasonable to promote the cause of education, including establishing, providing and improving school district programs, functions and activities for the benefit of pupils, and including all of the following:

(1) School government rules; suspension; expulsion.

. . . .

(c)1. The school board may expel a pupil from school whenever it finds the pupil guilty of repeated refusal or neglect to obey the rules . . . or finds that the pupil engaged in conduct while at school or while under the supervision of a school authority which endangered the property, health or safety of others . . . and is satisfied that the interest of the school demands the pupil's expulsion.

Wis. Stat. § 120.13(1).

¶ 37. The power to expel students from a public school is not new. For instance, § 54, ch. XXIII, Revised Statutes of State of Wisconsin (1871), reads:

The board shall have power to make all needful rules and regulations for the organization, graduation and government of the school or schools established in the district; said rules to take effect and be in force when a copy of the same, signed by a majority of the board, shall be filed with the clerk; to suspend any pupil from the privilege of the school for non-compliance with the rules established by them, or by the teacher, with their consent; *and to expel from school any pupil who shall persistently refuse or neglect to obey the rules and regulations above mentioned, whenever, upon due examination, they shall become satisfied that the interests of the school demand such expulsion.*

(Emphasis added.)

111

¶ 38. In *State ex rel. Dresser v. District Board of School District No. 1 [*St. Croix Falls], 135 Wis. 619, 627–28, 116 N.W. 232 (1908), the court stated:

> This court . . . holds that the school authorities have the power to suspend a pupil for an offense . . . which has a direct and immediate tendency to influence the conduct of other pupils while in the school room, to set at naught the proper discipline of the school, to impair the authority of the teachers, and to bring them into ridicule and contempt. Such power is essential to the preservation of order, decency, decorum, and good government in the public schools.
>
> . . . .
>
> The school authorities must necessarily be invested with a broad discretion in the government and discipline of the pupils, and the courts should not interfere with the exercise of such authority unless it has been illegally or unreasonably exercised.

¶ 39. These sentiments, expressed more than a century ago, are qualified now by a student's due process protections and individual rights. Nonetheless, there is no dispute that a school district may expel students who violate certain rules, and there is no challenge to the propriety of the expulsion of M.T. in this case. In a real sense, the dispute here boils down to whether the legislature has modified the statutes so that expulsion today does not mean the same as it meant in the past, that is, expulsion from the entire district, without qualification, unless the district chooses otherwise.

¶ 40. The term "expel" is not defined in the School District Government statutes. The DPI, however, has long interpreted the term to mean that a school district bears no responsibility for providing an education to expelled students. *See Remer v. Burlington Area Sch.*

*Dist.*, 149 F. Supp. 2d 665, 668 n.3 (E.D. Wis. 2001) (citing *Susan Marie H. v. Kenosha Unified Sch. Dist.*, State Superintendent of Pub. Instruction Decision and Order No. 157 (June 28, 1988); *Ricardo S. v. Sch. Dist. of Wis. Rapids*, Superintendent of Pub. Instruction Decision and Order No. 145 (Sept. 5, 1986)).[9]

¶ 41. This construction is supported by the statutory scheme in the School District Government statutes. For example, no school district may be required to enroll an expelled student while an expulsion order is in effect in another district. Wis. Stat. § 120.13(1)(f).

¶ 42. Furthermore, while the DPI encourages school districts to provide alternative education to expelled students, it has concluded that such programming is not required, and a failure to provide such alternative education is not a violation of an expelled student's constitutional rights. *See C.M. v. Kenosha School Dist. Bd. of Educ.*, Superintendent of Pub. Instruction Decision and Order No. 616 (April 17, 2008).

¶ 43. The DPI has memorialized its construction of the expulsion authority in two documents intended for the public: "*My child has been expelled. Now what?*" ("Parents are responsible for finding an educational program for their expelled child.") and "*Answers to Frequently Asked School Discipline Questions*" ("In gen-

---

[9] The 2001 *Remer* decision followed a decision in the United States Court of Appeals, *Remer v. Burlington Area School Dist.*, 205 F.3d 990, 997 n.2 (7th Cir. 2000), in which the Seventh Circuit also cited the two decisions of the State Superintendent of Public Instruction. The court said: "In one of its submissions to the district court, the School District explained that 'once a student has been expelled from a school, the district no longer has the responsibility to provide educational services to the student.' " *Id.*

eral, expulsion from a Wisconsin public school district removes a pupil's right to receive a free public education from any Wisconsin public school."). These documents are available on the DPI's website: www.dpi.wi.gov. (last examined on July 8, 2011). The DPI's longstanding interpretation of expulsion is entitled to deference.

¶ 44. According to the District, the fact that an expelled student also has been adjudicated delinquent does not change a school district's authority to expel a student without educational programming.

¶ 45. The circuit court stakes out a different position. It contends that under the Juvenile Justice Code adopted in 1995, *see* 1995 Wis. Act 77, "circuit courts have been given a preeminent role in juvenile dispositions and are entitled to exercise their discretion, *unless restricted by explicit statutory or constitutional limitations on their authority.*" (Petitioner's brief at 19)(Emphasis added.) This theory effectively eliminates the need to find statutory authority for the court's order in a juvenile disposition.

¶ 46. The circuit court adds that provisions in the code "strongly support a circuit court's authority to provide educational services to juveniles residing at home or outside of a detention center, regardless of whether the juvenile was expelled." (Petitioner's brief at 24–25) This proposition would inject the circuit court into a district's educational programming.

¶ 47. Finally, the circuit court asserts:

> The legislature needed an umpire to manage all of the distinct interests and parties, as well as to prevent agencies from unduly encroaching on each other's authority or from cost-shifting from one unit of government to another. The most logical umpire is the circuit court judge, who is in the best position to see the big

picture and coordinate all of the required services. This logic applies to all juveniles, including those who have been expelled. (Petitioner's brief at 26–27)

This formulation of the circuit court's power in juvenile dispositions under Wis. Stat. § 938.355 is not limited to educational services.

¶ 48. To support its position, the circuit court relies on several statutory provisions, including Wis. Stat. §§ 938.34(7d), 120.12(18), and 938.45.

¶ 49. As noted above, before its disposition of a juvenile adjudged to be delinquent, the circuit court designates an agency to prepare a report with background information and recommendations on various matters including a "plan for the provision of educational services to the juvenile, prepared after consultation with the staff of the school in which the juvenile is enrolled or the last school in which the juvenile was enrolled." Wis. Stat. § 938.33(1)(e). "If the court adjudges a juvenile delinquent, the court shall enter an order deciding one or more of the dispositions of the case as provided in this section under a care and treatment plan." Wis. Stat. § 938.34.

¶ 50. These dispositions include:

(7d) EDUCATION PROGRAM. (a) Except as provided in par. (d), order the juvenile to attend any of the following:

1. A nonresidential educational program, including a program for children at risk under s. 118.153, provided by the school district in which the juvenile resides.

2. Under a contractual agreement with the school district in which the juvenile resides, a nonresidential educational program provided by a licensed child welfare agency.

115

3. Under a contractual agreement with the school district in which the juvenile resides, an educational program provided by a private, nonprofit, nonsectarian agency that is located in the school district in which the juvenile resides and that complies with 42 USC 2000d.

4. Under a contractual agreement with the school district in which the juvenile resides, an educational program provided by a technical college district located in the school district in which the juvenile resides.

Wis. Stat. § 938.34(7d)(a).[10]

¶ 51. This provision has been part of the juvenile disposition statute since 1988. *See* § 12, 1987 Wis. Act 285, creating Wis. Stat. § 48.34(12) (1988). The provision was added, without any written explanation, as part of a Senate substitute amendment to Assembly Bill 389.

¶ 52. In its decision, the court of appeals discussed subsection (7d) as follows:

The circuit court points out that Wis. Stat. § 938.34(7d) authorizes it to order a delinquent juvenile to attend "[a] nonresidential educational program . . . provided by the school district in which the juvenile resides" and that Wis. Stat. § 938.355(1) authorizes it to employ "those means necessary to promote the objectives" of the juvenile justice code. It claims these provisions allow it to order a school district to provide educational services, even to an expelled student.

We note . . . that the power to order a juvenile to *attend* a provided program is not the same as the power

---

[10] This section governing dispositions for educational programming is not discussed in the legislative notes for 1995 Wis. Act 77. It has not been changed in any substantive fashion since its enactment, apart from the addition of a new subdivision which became effective May 2010. 2009 Wis. Act 302 § 104. We find no discussion of the legislature's intent regarding the interplay of this statute with the School District Government statutes.

to order a school district *to provide* a program. Rather, it is implicit in Wis. Stat. § 938.34(7d) that a program must already be provided by the school district before the court can order the juvenile to attend it. Indeed, the process of having the school district recommend an educational plan for a delinquent student serves the function of identifying for the court exactly what program(s) the school district can provide for the juvenile. When a school district has expelled a student and ordered that no educational services be provided for a certain period of time, logic dictates that there are no programs provided by the district available to the student during that expulsion period.

*Madison Metro.,* No. 2009AP2845–W at 9.

¶ 53. In sum, the court of appeals concluded that the District had the explicit statutory authority to refuse to provide educational services to a juvenile who has been expelled pursuant to a valid expulsion order, and that authority is not overridden by Wis. Stat. § 938.34(7d).

¶ 54. The court of appeals was correct. We are unable to interpret § 938.34(7d) as broadly as the circuit court suggests because it would empower the court to order school districts to create programs or enter into contracts. The language in subsection (7d)(a) —"order the juvenile to attend"—is quite different from the language in subsection (7d)(b) —"order the school board to disclose" The latter language is a clear directive to the school board; the former is not.

¶ 55. The circuit court relies upon (and disputes the court of appeals' interpretation of) Wis. Stat. § 120.12(18), which is part of the list of school board duties:

117

> The school board of a common or union high school district shall:
>
> . . . .
>
> (18) Coordinate and provide for continuity of educational programming for pupils receiving educational services as the result of a court order under s. 48.345 (12) or 938.34 (7d), including but not limited to providing a report to the court assigned to exercise jurisdiction under chs. 48 and 938 and the agency which is required to submit an educational plan for a child under s. 48.33 or 938.33 (1)(e). The report shall describe the child's educational status and make recommendations regarding educational programming for the child. The report shall be in writing, except that if the educational plan under s. 938.33 (1)(e) is presented orally at the dispositional hearing the report may be presented orally to the court assigned to exercise jurisdiction under chs. 48 and 938 and the agency at the dispositional hearing. If written, the report shall be provided to the court assigned to exercise jurisdiction under chs. 48 and 938 and the agency at least 3 days before the date of the child's dispositional hearing.

Wis. Stat. § 120.12(18).

¶ 56. This provision, though amended, also predates the Juvenile Justice Code. *See* Wis. Stat. § 120.12(18) (1988), created by § 30, 1987 Wis. Act 285.

¶ 57. The court of appeals concluded that there is nothing in § 120.12(18) that requires a school district to provide any specific educational services to a delinquent juvenile who has been expelled. The school board does have a duty to provide assistance to the court and the agency producing the report required under Wis. Stat. § 938.33(1)(e) and, generally, to coordinate and provide for continuity of educational programming for juveniles receiving educational services under a dispositional

118

order. Some of those pupils could be sent by a dispositional order to an institution like Ethan Allen; some could be sent to a local detention center; some could participate in alternative schooling provided by the school district; some might not be suspended or expelled at all.

¶ 58. The statutory language is broad because there are numerous situations in which the school district would be heavily involved with a juvenile's education, while there are other situations in which the juvenile would be totally removed from the school district, even without expulsion. Participation by the school district in attempting to provide for a continuity of educational programming would nearly always be in order without implying that the school district has a duty to deliver direct educational services to a student after expulsion.

¶ 59. We agree with the court of appeals that the circuit court erred by relying on Wis. Stat. § 938.45 as authority to bind the District and to support its Order to Provide Appropriate Educational Resources.

¶ 60. Wisconsin Stat. § 938.45 is titled, "Orders applicable to adults."[11] In pertinent part, the statute provides:

---

[11] The circuit court cited this section in its Order to Show Cause, issued on October 5, 2009, and in its Order to Provide Appropriate Educational Services, issued on October 16, 2009. In its reply brief to this court, the circuit court states that it is no longer claiming Wis. Stat. § 938.45 "as a significant basis for its authority," but instead is relying broadly on the Juvenile Justice Code and Wis. Stat. § 120.12(18). However, because the circuit court cited Wis. Stat. § 938.45 as the original basis for its exercise of authority over the District, we find it appropriate to address whether such exercise was proper.

119

(1) Orders when adult contributed to condition of juvenile.

(a) If in the hearing of a case of a juvenile alleged to be delinquent under s. 938.12 or in need of protection or services under s. 938.13 it appears that any person 17 years of age or older has been guilty of contributing to, encouraging, or tending to cause by any act or omission, such condition of the juvenile, the court may make orders with respect to the conduct of that person in his or her relationship to the juvenile, including orders relating to determining the ability of the person to provide for the maintenance or care of the juvenile and directing when, how, and where funds for the maintenance or care shall be paid.

(b) An act or failure to act contributes to a condition of a juvenile . . . if the natural and probable consequences of that act or failure to act would be to cause the juvenile to come within the provisions of s. 938.12 or 938.13.

Wis. Stat. § 938.45(1)(a)-(b).

¶ 61. An "adult" is defined in turn under § 938.02(1) as "a person who is 18 years of age or older," except for the purposes of prosecuting or investigating a crime allegedly committed by a 17–year-old. The term "person" is not defined in the Juvenile Justice Code.

¶ 62. Under Wis. Stat. § 990.01(26), the term "person" is generally defined to include "all partnerships, associations and bodies politic or corporate." However, Wis. Stat. § 990.01 provides that the following definitions set forth in ch. 990 "shall be construed as indicated *unless such construction would produce a result inconsistent with the manifest intent of the legislature.*" (Emphasis added.) The District asserts that it would be inconsistent with the manifest intent of the legislature to interpret the term "person" to encompass the District in this context.

120

■■
¶ 63. We have not previously had the opportunity to construe the meaning of the term "person" in the context of Wis. Stat. § 938.45(1). When interpreting the meaning of a statute, we begin with the language of the statute and give it its common, ordinary, and accepted meaning. *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. When that meaning is plain, courts will look no further. *Id.* We interpret statutory language in context —that is, in relation to surrounding or other closely related statutes and reasonably, to avoid absurd or unreasonable results. *Id.*, ¶ 46.

■■
¶ 64. We conclude that the plain meaning of "person" as it is used in Wis. Stat. § 938.45(1) refers to natural persons. Consequently, a school district is not capable of contributing to the delinquency of a minor under the plain language of this statute because a school district is not a natural person. Accordingly, the circuit court erred as a matter of law when it relied on this provision to obtain authority over the District.

¶ 65. Section 938.45 uses the term "adult" in the title of the statute ("Orders when adult contributed to condition of juvenile."), and it refers to an "adult" when it uses the phrase "any person 17 years of age" in the text in connection with alleged criminal conduct. The use of the term "adult" is significant because it is a defined term in the Juvenile Justice Code. By specifying that this section addresses "adults," not merely "persons," the legislature invoked the age requirements set forth in § 938.02(1).[12]

---

[12] Wisconsin Stat. § 990.001(6) reads: "STATUTE TITLES AND HISTORY NOTES. The titles to subchapters, sections, subsections, paragraphs and subdivisions of the statutes and

¶ 66. Under Wis. Stat. § 938.02(1), the general principle is that an "adult" is a person who is 18 years of age or older. To interpret § 938.45(1)(a) as including governmental bodies and entities such as the District would render an unreasonable result. Because the section governs an adult contributing to the delinquency of a minor, any "person" falling within the statute is subject to the age requirements of § 938.02(1). There would be no rational justification for including entities such as the District within a circuit court's authority in a delinquency proceeding, but only if the entity had been in existence for 17 or 18 years.

¶ 67. As the District noted, one school district has the same rights and obligations and duties as another, regardless of how long it has been in existence. There is no rational basis for the argument that a recently created district would be exempted by the statute, while another that had been in existence for 18 years would be subject to the circuit court's authority.

¶ 68. The legislative intent behind establishing a minimum age for contributing to the delinquency of a juvenile is clear. These statutes were enacted to control adults who have contributed to, encouraged, or tended to cause the juvenile's delinquent condition.

¶ 69. Section 938.45(1)(a) refers to "the conduct of that person in *his or her* relationship to the juvenile." (Emphasis added.) The choice of the words "his or her" also indicates that the legislature contemplated the exercise of authority over a natural person, capable of description as male or female, rather than a gender-neutral entity that could be described as "it."

---

history notes are not part of the statutes." However, courts often examine titles and history notes because they provide valuable clues to the meaning of statutory text.

¶ 70. The court of appeals observed that the circuit court contended that the District's refusal to provide educational programming for M.T. contributed to the juvenile's delinquent condition. It noted that the District's expulsion order and its subsequent refusal to provide services occurred *after* the only identified delinquent conduct by the juvenile. Thus, it was not logical to suggest that the District's action contributed to, encouraged, or tended to cause the juvenile's delinquency. The court of appeals concluded that the District "cannot be said to have failed in any duty that it owed to the juvenile."

¶ 71. The court of appeals was correct. The circuit court attempted to gain authority over the District by predicting *future* delinquency if the District refused to supply direct educational services. If the statute were interpreted to apply to potential problems that might be linked to public or private entities, not just actual adults, there would be no stopping point for the circuit court's authority over third parties.

¶ 72. We conclude that a plain reading of the statutory language in Wis. Stat. § 938.45, coupled with our obligation to construe statutes in a manner that avoids unreasonable results, clearly indicates that the term "person" encompasses natural persons, not entities such as the District.[13] If the District cannot be

---

[13] As noted previously, this question of statutory interpretation of Wis. Stat. § 938.45(1) is one of first impression. We have, however, considered the crime of contributing to the delinquency of a child as it is set forth in § 948.40. Those decisions bolster our conclusions set forth above: the purpose of this section is to provide jurisdiction over and consequences for natural persons, not political entities like the District. *See State v. Patterson,* 2010 WI 130, ¶ 8, 329 Wis. 2d 599, 790 N.W.2d 909 (an adult contributed to the delinquency of a minor by provid-

considered a "person," it cannot have contributed to M.T.'s delinquency; consequently, the circuit court could not obtain authority over the District under Wis. Stat. § 938.45.

¶ 73. In sum, we conclude that a circuit court does not have statutory authority to order a school district to provide alternative educational resources to a juvenile who has been expelled from school by a lawful and unchallenged expulsion order. This conclusion applies longstanding Wisconsin law and is in accord with decisions by courts in several other jurisdictions.[14]

---

ing Oxycodone to the 17–year-old victim); *State v. Williams,* 2002 WI 58, ¶ 76, 253 Wis. 2d 99, 644 N.W.2d 919 (an adult male contributed to the delinquency of a minor by allowing the child to engage in illegal gambling); *In re Disciplinary Proceedings Against Martin,* 112 Wis. 2d 661, 662, 334 N.W.2d 107 (1983) (an attorney's law license was suspended for contributing to the delinquency of a minor for serving alcoholic beverages to a 14–year-old); *In re Disciplinary Proceedings Against Rabideau,* 102 Wis. 2d 16, 19–20, 306 N.W.2d 1 (1981) (an attorney's law license was suspended for contributing to the delinquency of a minor for supplying marijuana to a 16–year-old); *State ex rel. Cholka v. Johnson,* 96 Wis. 2d 704, 707–08, 292 N.W.2d 835 (1980) (an adult contributed to the delinquency of a minor by furnishing alcohol to a 16–year-old girl); *Jung v. State,* 55 Wis. 2d 714, 716–17, 201 N.W.2d 58 (1972) (an adult male contributed to the delinquency of a minor by allowing a 15–year-old girl to stay at his apartment for approximately one month).

[14] *See Daniels v. Woodside,* 396 F.3d 730 (6th Cir. 2005); *RM & BC v. Washakie Cnty. Sch. Dist. No. One,* 102 P.3d 868 (Wyo. 2004); *D.B. v. Clarke Cnty. Bd. of Educ.,* 469 S.E.2d 438 (Ga. Ct. App. 1996); *Doe v. Superintendent of Sch. of Worcester,* 653 N.E.2d 1088 (Mass. 1995); *Walter v. Sch. Bd. of Indian River Cnty.,* 518 So. 2d 1331 (Fla. Dist. Ct. App. 1987); *In Re Jackson,* 352 S.E.2d 449 (N.C. Ct. App. 1987).

¶ 74. A supervisory writ is "a blending of the writ of mandamus and the writ of prohibition." *Dressler,* 163 Wis. 2d at 630. Like those extraordinary writs, a supervisory writ is dedicated to the discretion of the court of original jurisdiction. *Id.*

¶ 75. A writ of mandamus has long been recognized as "a summary, drastic, and extraordinary writ issued in the sound discretion of the court" to direct a public officer to perform his plain statutory duties. *Menzl v. City of Milwaukee,* 32 Wis. 2d 266, 275–76, 145 N.W.2d 198 (1966) (internal quotations and citations omitted). Because of the extraordinary nature of this discretionary power, the officer's duty must be clear and unequivocal. *Id.* at 276.

¶ 76. A writ of prohibition, on the other hand, is traditionally used "to keep an inferior court from acting outside its jurisdiction when there was no adequate remedy by appeal or otherwise." *State ex rel. Gaynon v. Krueger,* 31 Wis. 2d 609, 614, 143 N.W.2d 437 (1966). The writ of prohibition also is considered an extraordinary remedy, and is to be issued only "with great caution and forbearance, for the furtherance of justice and to secure order and regularity in judicial proceedings." *State ex rel. Kowaleski v. District Court of Milwaukee Cnty.,* 254 Wis. 363, 372, 36 N.W.2d 419 (1949) (quoting 42 Am. Jur. *Prohibition,* § 6) (*overruled* on other grounds by *State ex rel. Jackson v. Coffey,* 18 Wis. 2d 529, 537, 118 N.W.2d 939 (1963).

¶ 77. In *Dressler* the court of appeals synthesized these various precedents into five factors to be satisfied

in granting a petition for a supervisory writ.[15] The court stated:

> The petition for a writ of supervision is not a substitute for an appeal. . . . The petition for a supervisory writ will not be issued unless: (1) an appeal is an utterly inadequate remedy; (2) the duty of the circuit court is *plain;* (3) its refusal to act within the line of such duty or its intent to act in violation of such duty is *clear;* (4) the results of the circuit court's action must not only be prejudicial but must involve extraordinary hardship; and, (5) the request for relief was made promptly and speedily.

*Dressler,* 163 Wis. 2d at 630 (internal citations omitted).

¶ 78. The circuit court maintains that the court of appeals erred by treating the District's appeal as a petition for a supervisory writ because a traditional appeal would have provided an adequate remedy. The circuit court argues that, because M.T. had already returned to school at the time of the court of appeals' decision, there was no need for an expedited proceeding.

¶ 79. In its initial order, however, the court of appeals' reasoning did not rest on any need for an expedited proceeding, but on the nature of the dispute between the District and the circuit court. As Judge

---

[15] This test has also been articulated as consisting of four factors, by combining the third and fourth (i.e., that the duty of the circuit court is plain and the court has acted or intends to act in violation of that duty). *See State ex rel. Kalal v. Circuit Court for Dane Cnty.,* 2004 WI 58, ¶ 17, 271 Wis. 2d 633, 681 N.W.2d 110; *Burnett v. Alt,* 224 Wis. 2d 72, 96–97, 589 N.W.2d 21 (1999). Because the court of appeals referenced the five-factor test set forth in *State ex rel. Dressler v. Circuit Court for Racine Cnty.,* 163 Wis. 2d 622, 472 N.W.2d 532 (Ct. App. 1991), and because there is no substantive difference between the two articulations of the test, we frame our analysis in terms of these five criteria.

Higginbotham observed in his Feb. 17, 2010, order, "[R]ather than claiming that the circuit court misapplied the law or erroneously exercised its discretion in ordering educational services under the facts and circumstances of this case," the District focused its challenge on the circuit court's authority to act as it did.

¶ 80. The District similarly defends the court of appeals' order by pointing out that any appeal focused on a specific order related to a specific similarly situated juvenile would likely be quickly dismissed as moot. In this instance, M.T. was already re-enrolled in high school by the time of the appeal.

¶ 81. We agree with the court of appeals' determination. If the District had sought review of the circuit court's order to provide educational services to M.T., an appeal would have been the proper avenue. In a challenge to the circuit court's authority, however, a writ of prohibition was more appropriate than an appeal for handling the dispute.

¶ 82. Accordingly, we consider whether the five criteria for a writ of prohibition were met in the instant case.

¶ 83. The parties do not dispute that the District promptly sought relief. This is the fifth factor. As discussed above, we agree on the first factor, that an appeal would not have provided an adequate remedy. The other three factors are in dispute.

¶ 84. The first of the disputed factors is whether the circuit court's duty was plain. *Dressler*, 163 Wis. 2d at 630. The circuit court contends that its duty was not plain, because it was faced with a novel question of law requiring harmonization of several statutory provisions. As we discussed in the previous section, and as

127

the District has consistently argued, the circuit court did not have the authority, express or implied, to order the District to amend its lawful expulsion of M.T. to provide alternative educational resources. The circuit court's duty was plain: to keep within the scope of its statutory authority.

¶ 85. Turning to the next factor, we consider whether the circuit court clearly intended to act in violation of its duty.[16] *Id.* Because we have concluded that the circuit court's duty to keep within the bounds of its lawful authority was plain, its violation of that duty was clear when it ordered the District to provide educational resources to M.T., in direct contradiction to the District's expulsion order. The circuit court's reliance on Wis. Stat. § 938.45 was plain error.

¶ 86. Finally, for the writ of prohibition to have been proper, there must have been a showing that the circuit court's action would result in extraordinary hardship or irreparable harm to the District. *Burnett v. Alt,* 224 Wis. 2d 72, 96–97, 589 N.W.2d 21 (1999). In its order, the court of appeals observed that:

> While providing educational services in this single case might not present an extraordinary hardship, the possibility that the school district might be required in the future to provide similar educational services to an undetermined number of expelled students under the circuit court's interpretation of the relevant statutes satisfies that criterion.

*Madison Metro.*, No. 2009AP2845–W at 6.

---

[16] This language should not be taken to suggest that we view Judge Flanagan's actions as a conscious, intentional overstepping of his authority. Although we conclude that he was without authority to issue the order in this case, the record is replete with evidence that he took his responsibilities under the Juvenile Justice Code very seriously and with commendable consideration.

¶ 87. The circuit court dismisses this argument as mere speculation about the possible costs of future similar orders. As we pointed out in *State ex rel. Lynch v. County Court, Branch III,* 82 Wis. 2d 454, 460, 262 N.W.2d 773 (1978), this criterion cannot be satisfied by mere assertions. It is possible, however, for the harm to be "inherent in the situation," as was the case in *Lynch. Id.* at 468.

¶ 88. In *Lynch,* we were presented with an order by the county court requiring the district attorney to allow the attorneys of seven criminal defendants to review the state's files in search of exculpatory material. *Id.* at 458. The district attorney, after repeatedly offering to allow the county court to conduct an in camera review of his files, petitioned the circuit court for a writ of prohibition. *Id.* Upon review, we concluded that the writ was proper, because there was no constitutional or statutory basis for the county judge's order, and the harm was inherent in the situation. *Id.* at 468.

¶ 89. In the instant case, we have already held that there was no basis in law for the circuit court's assertion of authority over the District in these circumstances. We hold, as in *Lynch,* that the potential extraordinary harm to the District is inherent in the specter of interference by the courts. The District would be faced not only with the costs of any continued educational services ordered by the circuit court but also the prospect that such costs would interfere with the District's performance of its duties in lawfully expelling students who endanger the health and safety of others. This hardship is inherent in the circuit court's actions.

¶ 90. In conclusion, we find that the court of appeals properly considered the five criteria set forth in

*Dressler,* and properly exercised its discretion in finding that a supervisory writ of prohibition was warranted in this case.

## IV. CONCLUSION

¶ 91. In light of the foregoing, we hold that the circuit court erred when it sought to obtain authority over the District under Wis. Stat. § 938.45(1)(a). A school district is not a "person" as contemplated in the statute, and is therefore incapable of contributing to the delinquency of a minor. Additionally, a circuit court may not require a school district to provide alternative educational resources to a lawfully expelled student who is still residing in the community. Finally, because the circuit court exceeded its authority by ordering the District to provide educational resources to M.T., the writ of prohibition issued by the court of appeals was proper.

*By the Court.*—The decision and order of the court of appeals is affirmed.

¶ 92. N. PATRICK CROOKS, J. (*dissenting*). This case presents the question of whether a circuit court has authority, when exercising its juvenile court jurisdiction[1] in a delinquency proceeding pursuant to Wis. Stat. ch. 938 (2007–08), to order a school district to submit a plan to provide educational services to a student expelled by the district pursuant to Wis. Stat.

---

[1] The term "court," as used in the Juvenile Justice Code, refers to the circuit court "assigned to exercise jurisdiction under [Wis. Stat. ch. 938]." Wis. Stat. § 938.02(2m). Similarly, when I refer to the circuit court in this dissent, I am referring to the circuit court exercising juvenile court jurisdiction pursuant to Wis. Stat. ch. 938.

130

§ 120.13(1)(c).[2] While the majority focuses on the school district's power to expel a juvenile,[3] the scope of a circuit court's statutory authority when exercising its juvenile court jurisdiction, pursuant to Wis. Stat. ch. 938, is the proper focus to resolve this issue.

¶ 93. In enacting the 1996 Juvenile Justice Code,[4] the legislature explicitly conveyed its intent to give circuit courts ample authority to issue dispositions to effectuate the Code's purposes, one of which is to "equip juvenile offenders with competencies to live responsibly and productively."[5] This includes the circuit court's authority to craft appropriate dispositional orders from "a myriad of alternatives" to carry out a primary objective of the Juvenile Justice Code: rehabilitation.[6] The Code explicitly authorizes the circuit court to plan for and organize the provision of educational services to a juvenile adjudged delinquent.[7] The Juvenile Justice Code also puts emphasis on accountability and protection of the public.[8]

[2] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

[3] In this case, M.T. was the juvenile whom the circuit court adjudged delinquent.

[4] Wis. Stat. ch. 938. The Juvenile Justice Code was enacted on November 17, 1995, and took effect on July 1, 1996, 1995 Wisconsin Act 77, and was amended thereafter.

[5] Wis. Stat. § 938.01(2). *See also* Wis. Stat. § 938.355(1) ("The disposition shall employ those means necessary to promote the objectives under s. 938.01.").

[6] *State v. Hezzie R.*, 219 Wis. 2d 848, 873, 875–76, 580 N.W.2d 660 (1998).

[7] *See* Wis. Stat. §§ 938.33(1)(e), 938.34(7d)(a)1.; 938.355(1).

[8] *See* Wis. Stat. § 938.01(2).

¶ 94. The majority diminishes the significant effect that the 1996 Juvenile Justice Code had on a circuit court's authority when exercising its juvenile court jurisdiction. The majority errs in concluding that "the dispute here boils down to whether the legislature has modified the statutes so that expulsion today does not mean the same as it meant in the past . . ."—in other words, that the Juvenile Justice Code of 1996 did not serve to expand the circuit court's authority. Majority op., ¶ 39. I take issue with the majority's failure to recognize that the 1996 Juvenile Justice Code effected a sea change in circuit courts' authority when exercising their juvenile court jurisdiction.

¶ 95. The Juvenile Justice Study Committee (JJSC), given the task of making recommendations to improve the Children's Code, explained in a letter introducing its report to the governor and the legislature that the Juvenile Justice Code would revolutionize the way that circuit courts deal with juvenile crime:

> The accompanying recommendations will significantly change the way Wisconsin treats young lawbreakers. Personal accountability and community protection will join offender rehabilitation as the primary objectives of Wisconsin's juvenile justice system. Such a balanced approach is the most effective way to respond to juvenile crime.[9]

In its report, the JJSC explained that the Juvenile Justice Code would "[r]eorganize and *expand disposition and sanction options* for juvenile courts and caseworkers."[10] The JJSC recommended that the "dispositions be reorganized into the following categories,"

---

[9] Juvenile Justice Study Committee, *Juvenile Justice: A Wisconsin Blueprint for Change* (Jan. 1995).

[10] *Id.* at 16 (emphasis added).

including "treatment and education," and "the creation of the following new dispositions: . . . [p]articipation in an educational program that is designed to deter future delinquent behavior . . . [and] [p]articipation in a day treatment program if the juvenile has specialized educational needs."[11] The JJSC's report leaves no doubt that the 1996 Juvenile Justice Code has expanded the circuit court's authority to develop a wide range of dispositions to tackle juvenile crime effectively. The majority errs in framing its analysis around a hollow reading of the Juvenile Justice Code.

¶ 96. According to the school district and the majority, the circuit court's exercise of its authority conflicts with a school district's power to expel a student if the circuit court orders the school district to provide educational services to such a juvenile.[12] Even if there is such a conflict, I am convinced that the circuit court's authority prevails. The school district does have the power to expel a student, but that power does not relieve it of its obligations to provide educational services, if a circuit court orders the school district to do so for a juvenile it has adjudged delinquent.[13]

¶ 97. In this case, the Dane County Circuit Court, the Honorable David T. Flanagan presiding, exercising its juvenile court jurisdiction, appropriately used its authority in ordering the Madison Metropolitan School District (MMSD) to submit a plan to provide some reasonable educational services to the juvenile adjudged delinquent, M.T., in whatever manner MMSD

---

[11] *Id.* at 16–17.

[12] *Compare* Wis. Stat. ch. 938, *with* Wis. Stat. § 120.13(1)(c).

[13] Wis. Stat. §§ 120.12(18), 938.33(1)(e), 938.34(7d)(a)1., 938.355(1).

determined was appropriate. The circuit court did not, in any manner, modify or set aside MMSD's decision to expel this juvenile.

¶ 98. Unlike the majority, I do not believe we should diminish the circuit court's authority under the 1996 Juvenile Justice Code. I would adhere to the Wisconsin Legislature's clearly expressed intent in enacting that Code to provide circuit courts with the necessary authority to fashion appropriate and effective dispositions for juveniles adjudged delinquent. I would hold that a circuit court has authority, when exercising its juvenile court jurisdiction in a delinquency proceeding, to order a school district to submit a plan to provide educational services to a student expelled by the district.

¶ 99. I, therefore, respectfully dissent.

I

¶ 100. This case is resolved properly by harmonizing the circuit court's authority to create a disposition for a juvenile adjudged delinquent, pursuant to Wis. Stat. ch. 938, with the school district's power to expel a juvenile pursuant to Wis. Stat. § 120.13(1)(c). Because it is the extent of the circuit court's authority when exercising its juvenile court jurisdiction that is being questioned in this case, my focus is on interpreting the scope of the circuit court's authority.

¶ 101. When interpreting a statute, this court strives to give effect to the legislature's intent, as expressed through the statutory language, including the scope, context, and purpose of the statute. *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶¶ 44, 48, 271 Wis. 2d 633, 681 N.W.2d 110. "[S]tatutory language is interpreted in the context in which it is

134

used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46. This court also strives "to give reasonable effect to every word, in order to avoid surplusage." *Id.* As the relevant provisions of Wis. Stat. ch. 938 deal with the same subject matter, this court must interpret these provisions *in pari materia,* "in a manner that harmonizes them in order to give each full force and effect." *McDonough v. Dep't of Workforce Dev.,* 227 Wis. 2d 271, 279–80, 595 N.W.2d 686 (1999) (quoting *State v. Aaron D.,* 214 Wis. 2d 56, 66, 571 N.W.2d 399 (Ct. App. 1997)).

¶ 102. The language of the 1996 Juvenile Justice Code expressly provides its intent and purposes. The legislature began by explaining that " '[t]he Juvenile Justice Code', [] shall be liberally construed in accordance with the objectives expressed in this section." Wis. Stat. § 938.01(1). The legislature explained the relevant objectives as follows:

> It is the intent of the legislature to promote a juvenile justice system capable of dealing with the problem of juvenile delinquency, a system which will protect the community, impose accountability for violations of law and equip juvenile offenders with competencies to live responsibly and productively. To effectuate this intent, the legislature declares the following to be equally important purposes of this chapter:
>
> . . .
>
> (c) To provide an individualized assessment of each alleged and adjudicated delinquent juvenile, in order to prevent further delinquent behavior through the development of competency in the juvenile offender, so that he or she is more capable of living productively and responsibly in the community.
>
> . . .

135

(f) To respond to a juvenile offender's needs for care and treatment, consistent with the prevention of delinquency, each juvenile's best interest and protection of the public, by allowing the court to utilize the most effective dispositional option.

Wis. Stat. § 938.01(2).

¶ 103. To effectuate these purposes, the legislature authorized circuit courts to draw upon the resources provided by other agencies and entities to develop an appropriate dispositional order, after it has adjudged a juvenile delinquent. For example, the circuit court is required to designate an agency[14] to submit a report about the juvenile adjudged to be delinquent before the court imposes a disposition. Wis. Stat. § 938.33(1). This report includes, among other things, "[a] plan for the provision of educational services to the juvenile, prepared after consultation with the staff of the school in which the juvenile is enrolled or the last school in which the juvenile was enrolled." Wis. Stat. § 938.33(1)(e). As part of their duties, school districts are required to be involved in providing educational services to juveniles adjudged delinquent when ordered to do so by a circuit court exercising its juvenile court jurisdiction. School districts must "[c]oordinate and provide for continuity of educational programming for pupils receiving educational services as the result of a court order under s. 48.345 (12) or 938.34 (7d) . . . ." Wis. Stat. § 120.12(18).

¶ 104. The legislature has clearly given the circuit court the discretion and the tools to develop an appro-

---

[14] The agency that is directed to create this report is defined as "the department, a county department or a licensed child welfare agency." Wis. Stat. § 938.38(1)(a). In this case, for example, the report was created by the Dane County Department of Human Services (DCDHS).

priate disposition, including ordering the provision of educational services. In addition to many other options listed in the statute, the circuit court may "order the juvenile to attend any of the following: [] A nonresidential educational program, including a program for children at risk under s. 118.153, provided by the school district in which the juvenile resides." Wis. Stat. § 938.34(7d)(a)1. The legislature's directive that "[t]he disposition shall employ those means necessary to promote the objectives under s. 938.01" recognizes the breadth of the circuit court's authority to craft an appropriate dispositional order for each juvenile adjudged delinquent, in order to fulfill the purposes of the Juvenile Justice Code. Wis. Stat. § 938.355(1).

¶ 105. These provisions, when read together, provide express statutory authority to a circuit court to order a school district to create a plan to provide some reasonable educational services to a juvenile adjudged delinquent, consistent with the disposition that the circuit court has determined is appropriate. The 1996 Juvenile Justice Code expressly authorizes a circuit court to order the provision of educational services as one of the "myriad of alternatives" at the circuit court's disposal, and providing educational services is consistent with the Code's objectives, which include rehabilitation of juveniles. *Hezzie R.,* 219 Wis. 2d at 873, 875–76. The question is: does a school district's power to expel a student limit this authority? I am satisfied that it does not.

¶ 106. After one school district expels a student, another school district may not be required to enroll an expelled student.[15] However, when a circuit court exer-

---

[15] *See* Wis. Stat. § 120.13(1)(f) ("No school board is required to enroll a pupil during the term of his or her expulsion from another school district.").

cising its juvenile court jurisdiction adjudges that juvenile to be delinquent, Wis. Stat. ch. 120 envisions that a school district's obligations may change. Specifically, Wis. Stat. § 120.12(18) obligates the school district to "[c]oordinate and provide for continuity of educational programming for pupils receiving educational services as the result of a court order under s. 48.345 (12) or 938.34 (7d)." There is no exception from this provision for a juvenile who has been expelled.

¶ 107. Where this court is presented with a potential conflict between the judicial branch's statutory authority and the executive branch's attempt to enforce what it believes to be its statutory powers, this court will appropriately uphold the judicial branch's statutory authority applying constitutional separation of powers principles. *See, e.g., Racine Cnty. v. Int'l Ass'n of Machinists and Aerospace Workers Dist. 10*, 2008 WI 70, ¶ 17, 310 Wis. 2d 508, 751 N.W.2d 312. In *Racine County*, a union filed a grievance against Racine County and Kevin Van Kampen (Van Kampen), the Racine County Family Court Commissioner and the Director of Family Court Counseling Services at the time, after Van Kampen entered into service contracts with retired employees to fill bargaining unit positions. *Id.*, ¶¶ 2, 4–6. The arbitrator assigned to resolve the grievance ruled in favor of the union, concluding that Van Kampen's actions violated a collective bargaining agreement. *Id.*, ¶ 7. The arbitrator ordered Racine County to "cease and desist from continuing existing Service Agreements or [from] entering into new Agreements which displace[d] . . . bargaining unit positions . . . ." *Id.*

¶ 108. This court concluded that the arbitrator, giving deference to the executive branch's claimed statutory authority, exceeded her authority by invading and overriding Van Kampen's statutory authority as an

138

agent of the judiciary. *Id.*, ¶¶ 2–3, 17. We concluded that the executive branch's exercise of its claimed statutory authority "cannot trump such statutory, judicial branch authority because doing so would violate separation of powers principles." *Id.*, ¶ 17. Similarly, I am satisfied that in this case, the school district's claimed statutory authority, as part of the executive branch, does not trump the circuit court's statutory authority when exercising its juvenile court jurisdiction. To rule otherwise would be violative of separation of powers principles here.

¶ 109. Therefore, I conclude that a circuit court, when exercising its juvenile court jurisdiction, has the statutory authority to order a school district to provide some type of reasonable educational services to a juvenile adjudged delinquent, whether or not the school district has expelled that juvenile.

II

¶ 110. I am also convinced that, in this case, the circuit court, exercising its juvenile court jurisdiction, acted within its statutory authority, and appropriately exercised its authority and discretion, by ordering MMSD to create a plan to provide some reasonable educational services to M.T.

¶ 111. It is clear from the record that throughout the proceedings, the circuit court was concerned about, and focused on, ensuring that M.T. continue with his education as part of the disposition that the circuit court imposed. This began with the information presented by the Dane County Department of Human Services (DCDHS) to the circuit court in DCDHS's juvenile delinquency assessment/report (DCDHS's report). The report noted M.T.'s past problems in school,

and also his "desire to be on a basketball team and to get back on track in school." At the disposition hearing, the circuit court stated that its primary concern was getting M.T. some educational services on a regular basis, while he was under the circuit court's supervision.

¶ 112. The circuit court worked with DCDHS and MMSD in an attempt to locate some educational services for M.T., but was unsuccessful. The circuit court noted that MMSD would be required to provide M.T. with educational services, if the circuit court removed him from his home and placed him in the Dane County Juvenile Shelter or in a detention facility such as the Dane County Juvenile Detention Center. However, the circuit court stated that removal from his home was "a drastic step," which it concluded was not appropriate in this case.[16] This conclusion is consistent with DCDHS's recommendation in its report to the circuit court.

¶ 113. After considering all of the available options, the circuit court ordered MMSD to submit "a plan to provide forthwith educational services, not less than those provided in the Dane County Juvenile Detention Center, to [M.T.] at whatever location and in whatever manner the District deems to be safe and educationally appropriate." The circuit court did not review, modify or

---

[16] Using placement outside of the juvenile's home as a means to provide educational services, either before or after a finding of delinquency, is inappropriate for several reasons. In this case, the record does not show that the circuit court made any of the findings required in order to hold a juvenile in physical custody before such a finding of delinquency. *See* Wis. Stat. § 938.205. Additionally, placement in a juvenile detention facility would not have served to provide educational services to M.T. for the period of his expulsion because placement in a detention facility may not be for more than 30 total days after a juvenile is adjudged delinquent. Wis. Stat. § 938.34(3)(f).

set aside MMSD's expulsion order, and noted that it "offer[ed] no criticism of the decision of MMSD to expel [M.T.] nor [did the circuit court] suggest that the District lacked a proper, lawful basis to do so." The circuit court ordered MMSD to develop its own plan, instead of ordering MMSD to provide the exact educational services that the circuit court deemed appropriate. This measured approach indicates that the circuit court took MMSD's decision to expel M.T. into account, and sought to provide MMSD with maximum flexibility to come up with a plan that would balance the need to provide educational services with other competing concerns such as safety and cost. The circuit court appropriately exercised its authority and discretion within its statutory authority by ordering MMSD to develop a plan to provide some reasonable educational services to M.T.

## III

¶ 114. In coming to a contrary result, the majority fails to properly harmonize Wis. Stat. ch. 120 with Wis. Stat. ch. 938. Instead, the majority spends five pages and fourteen paragraphs concluding that Wis. Stat. § 938.45 applies only to natural persons, not school districts. This is totally unnecessary because the circuit court explained in its reply brief to this court that it "no longer claims Wis. Stat. § 938.45 as a significant basis for its authority." Pet'rs Reply Br. at 7 (some words capitalized in original). The attorneys for the circuit court argue that the strongest authorities supporting the court's position are the relevant portions of Wis. Stat. § 120.12(18), § 938.01(1)-(2), § 938.33(1)(e), § 938.34(7d)(a)1., and § 938.355(1) discussed herein. I conclude that a proper application of these statutory sections provides the circuit court with clear authority. *See supra* ¶¶ 9–18.

¶ 115. The majority spends much of its analysis on whether, under Wis. Stat. ch. 120, a school district is required to provide educational services to an expelled student. I am satisfied that pursuant to Wis. Stat. ch. 120 a school district is not required to provide educational services to all expelled students, but there is nothing in that chapter, Wis. Stat. ch. 938, or in this court's precedent that abrogates a circuit court's authority under Wis. Stat. ch. 938 and Wis. Stat. ch. 120, to order a school district to provide such services to a particular juvenile adjudged delinquent. The majority treats the school district's power to expel students as an unqualified power that, once exercised, relieves it of any other obligations regarding that juvenile. Wisconsin Stat. § 120.13(1)(c) cannot be read so broadly, nor should the circuit court's authority under the 1996 Juvenile Justice Code be read so narrowly.

¶ 116. The majority also relies on an error in logic to reach its conclusion that a school district's power to expel is an unlimited power that allows it to refuse to provide educational services to such a juvenile unless and until it decides otherwise. For this bold proposition the majority quotes Wis. Stat. § 120.13, a previous version of this statute, and *State ex rel. Dresser v. District Board of School District No. 1,* 135 Wis. 619, 116 N.W. 232 (1908). The premise in *Dresser,* which was decided well before the effective date of the Juvenile Justice Code in 1996, was that a circuit court could not order a school district to reinstate suspended students unless the school district abused its discretion in suspending those students. *Id.* at 627–28. It had nothing to do with a circuit court's authority to require the provision of some reasonable educational services, outside of school premises, to an expelled student who has been adjudged delinquent. Thus, *Dresser* is inapplicable in

142

this case, where the circuit court did not reverse or modify MMSD's expulsion order, but rather appropriately exercised its authority and discretion to order MMSD to create a plan to provide M.T. with some reasonable educational services. The 1996 Juvenile Justice Code clearly provides circuit courts exercising juvenile court jurisdiction with extensive additional powers and authority which such courts did not have in 1908.

## IV

¶ 117. While I believe it is important to address the scope of the circuit court's authority when exercising its juvenile court jurisdiction, it was, I am satisfied, inappropriate for the court of appeals to issue a writ of prohibition here, a type of supervisory writ. *See State ex rel. Dressler v. Circuit Court for Racine Cnty.*, 163 Wis. 2d 622, 630, 472 N.W.2d 532 (Ct. App. 1991). "A supervisory writ 'is considered an extraordinary and drastic remedy that is to be issued only upon some grievous exigency.' " *Kalal,* 271 Wis. 2d 633, ¶ 17 (quoting *Dressler,* 163 Wis. 2d at 630). To obtain a supervisory writ, a petitioner must establish that:

> (1) an appeal is an inadequate remedy; (2) grave hardship or irreparable harm will result; (3) the duty of the trial court is plain and it must have acted or intends to act in violation of that duty; and (4) the request for relief is made promptly and speedily.

*Id.,* ¶ 17 (quoting *Burnett v. Alt,* 224 Wis. 2d 72, 96–97, 589 N.W.2d 21 (1999)). At least three of these requirements appear not to be met in this case, since an appeal would seem to provide an adequate remedy to resolve this issue, grave hardship or irreparable harm would

not result, and the circuit court's duty was definitely not plain nor was such duty being or about to be clearly violated.

¶ 118. In its decision to issue a writ of prohibition, the court of appeals stated simply that "the issues raised by this appeal can be more appropriately handled by writ than by appeal." *Madison Metro. Sch. Dist. v. Circuit Court for Dane Cnty.*, No. 2009AP2845–W, unpublished order at 6 (Wis. Ct. App. June 30, 2010). If the circuit court's decision regarding M.T. was taken as an appeal but was moot by that time, the court of appeals still could have addressed this significant legal issue regarding the scope of the circuit court's authority. The issue is of great public importance, it would likely recur yet evade review, and its resolution is necessary to guide circuit courts. *State v. Jeremiah C.*, 2003 WI App 40, ¶ 10, 260 Wis. 2d 359, 659 N.W.2d 193.

¶ 119. There has also not been a showing what grave hardship or irreparable harm would result from the circuit court's decision. In its conclusion to the contrary, the court of appeals stated that "[w]hile providing educational services in this single case might not present an extraordinary hardship, the *possibility* that the school district might be required in the future to provide similar educational services to an undetermined number of expelled students under the circuit court's interpretation of the relevant statutes satisfies that criterion." *Madison Metro. Sch. Dist.*, No. 2009AP2845–W, at 6 (emphasis added). The majority concludes that "the potential extraordinary harm to the District is inherent in the specter of interference by the courts." Majority op., ¶ 89. I conclude that neither the court of appeals' speculation regarding the impact of the circuit court's decision, nor the majority's speculation about court interference satisfies the requirement of a

144

showing of "grave hardship or irreparable harm"—a high hurdle. *See Kalal,* 271 Wis. 2d 633, ¶ 17 (quoting *Burnett,* 224 Wis. 2d at 96–97).

¶ 120. Even more compelling: the circuit court's duty was certainly not plain, and the circuit court did not clearly violate nor was it about to violate that duty. The majority greatly oversimplifies the plain duty requirement in its summary conclusion that "[t]he circuit court's duty was plain: to keep within the scope of its statutory authority." Majority op., ¶ 84. Obviously the circuit court must act within its authority. I am satisfied based on the statutory provisions at issue that that is what the circuit court did here. The majority lacks authority for its position. We have rejected previously an expansive interpretation of the plain duty requirement similar to that advanced by the majority here, concluding that it "would transform the writ into an all-purpose alternative to the appellate review process." *Kalal,* 271 Wis. 2d 633, ¶ 24.

V

¶ 121. This case presents the question of whether a circuit court has authority, when exercising its juvenile court jurisdiction in a delinquency proceeding pursuant to Wis. Stat. ch. 938, to order a school district to submit a plan to provide educational services to a student expelled by the district pursuant to Wis. Stat. § 120.13(1)(c). While the majority focuses on the school district's power to expel a juvenile, the scope of a circuit court's statutory authority when exercising its juvenile court jurisdiction, pursuant to Wis. Stat. ch. 938, is the proper focus to resolve this issue.

¶ 122. In enacting the 1996 Juvenile Justice Code, the legislature explicitly conveyed its intent to give circuit courts ample authority to issue dispositions

145

to effectuate the Code's purposes, one of which is to "equip juvenile offenders with competencies to live responsibly and productively."[17] This includes the circuit court's authority to craft appropriate dispositional orders from "a myriad of alternatives" to carry out a primary objective of the Juvenile Justice Code: rehabilitation.[18] The Code explicitly authorizes the circuit court to plan for and organize the provision of educational services to a juvenile adjudged delinquent.[19] The Juvenile Justice Code also puts emphasis on accountability and protection of the public.[20]

¶ 123. The majority diminishes the significant effect that the 1996 Juvenile Justice Code had on a circuit court's authority when exercising its juvenile court jurisdiction. The majority errs in concluding that "the dispute here boils down to whether the legislature has modified the statutes so that expulsion today does not mean the same as it meant in the past . . ."—in other words, that the Juvenile Justice Code of 1996 did not serve to expand the circuit court's authority. Majority op., ¶ 39. I take issue with the majority's failure to recognize that the 1996 Juvenile Justice Code effected a sea change in circuit courts' authority when exercising their juvenile court jurisdiction.

¶ 124. The Juvenile Justice Study Committee (JJSC), given the task of making recommendations to improve the Children's Code, explained in a letter

---

[17] Wis. Stat. § 938.01(2). *See also* Wis. Stat. § 938.355(1) ("The disposition shall employ those means necessary to promote the objectives under s. 938.01.").

[18] *Hezzie R.*, 219 Wis. 2d at 873, 875–76.

[19] *See* Wis. Stat. §§ 938.33(1)(e), 938.34(7d)(a)1.; 938.355(1).

[20] *See* Wis. Stat. § 938.01(2).

introducing its report to the governor and the legislature that the Juvenile Justice Code would revolutionize the way that circuit courts deal with juvenile crime:

> The accompanying recommendations will significantly change the way Wisconsin treats young lawbreakers. Personal accountability and community protection will join offender rehabilitation as the primary objectives of Wisconsin's juvenile justice system. Such a balanced approach is the most effective way to respond to juvenile crime.[21]

In its report, the JJSC explained that the Juvenile Justice Code would "[r]eorganize and *expand disposition and sanction options* for juvenile courts and caseworkers."[22] The JJSC recommended that the "dispositions be reorganized into the following categories," including "treatment and education," and "the creation of the following new dispositions: . . . [p]articipation in an educational program that is designed to deter future delinquent behavior . . . [and] [p]articipation in a day treatment program if the juvenile has specialized educational needs."[23] The JJSC's report leaves no doubt that the 1996 Juvenile Justice Code has expanded the circuit court's authority to develop a wide range of dispositions to tackle juvenile crime effectively. The majority errs in framing its analysis around a hollow reading of the Juvenile Justice Code.

¶ 125. According to the school district and the majority, the circuit court's exercise of its authority conflicts with a school district's power to expel a student if the circuit court orders the school district to provide

---

[21] Juvenile Justice Study Committee, *Juvenile Justice: A Wisconsin Blueprint for Change* (Jan. 1995).

[22] *Id.* at 16 (emphasis added).

[23] *Id.* at 16–17.

147

educational services to such a juvenile.[24] Even if there is such a conflict, I am convinced that the circuit court's authority prevails. The school district does have the power to expel a student, but that power does not relieve it of its obligations to provide educational services, if a circuit court orders the school district to do so for a juvenile it has adjudged delinquent.[25]

¶ 126. In this case, the Dane County Circuit Court, the Honorable David T. Flanagan presiding, exercising its juvenile court jurisdiction, appropriately used its authority in ordering the Madison Metropolitan School District (MMSD) to submit a plan to provide some reasonable educational services to the juvenile adjudged delinquent, M.T., in whatever manner MMSD determined was appropriate. The circuit court did not, in any manner, modify or set aside MMSD's decision to expel this juvenile.

¶ 127. Unlike the majority, I do not believe we should diminish the circuit court's authority under the 1996 Juvenile Justice Code. I would adhere to the Wisconsin Legislature's clearly expressed intent in enacting that Code to provide circuit courts with the necessary authority to fashion appropriate and effective dispositions for juveniles adjudged delinquent. I would hold that a circuit court has authority, when exercising its juvenile court jurisdiction in a delinquency proceeding, to order a school district to submit a plan to provide educational services to a student expelled by the district.

¶ 128. For the reasons set forth herein, I respectfully dissent.

---

[24] *Compare* Wis. Stat. ch. 938, *with* Wis. Stat. § 120.13(1)(c).

[25] Wis. Stat. §§ 120.12(18), 938.33(1)(e), 938.34(7d)(a)1., 938.355(1).

¶ 129. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice ANN WALSH BRADLEY join this dissent.

149